Wayne Colello v. GEICO General Insurance Company, case number 23-13689. May it please the court. Is it Mr. Colello or is it... It's Central Florida, so it's Colello. Colello, thank you. All right, if we were local... All right. You have a different... Yeah, you have to ask. And I have to wear these now, so excuse me if I go back and forth. So, thank you for having us here. This appeal presents another step in a very long dance between GEICO, its chosen counsel in all these cases, my firm, and my clients. And that's reflected by how many of the cases the parties have cited involve the same law firms and the same insurance company. This case has two prongs. The easiest prong is the district court never had jurisdiction. The district court, upon receiving the remand motion, was advised that there was a non-diverse party in Mr. Eridani who was subject to a declaratory action. Let me jump in there. I actually think there's a more fundamental jurisdictional problem. I want to explore it with you. And it's one you touch on in your briefs. And that is that, in addition... So, first of all, general principles. There's a general principle of law that where there are a number of jurisdictional issues, a court is allowed to sort of choose which one it wants to go down. Lots of cases have multiple jurisdictional problems, and so a court can say, I'm going to choose jurisdictional issue A rather than jurisdictional issue B. That's principle number one. And that's pretty well established. I can give you the case law from the Supreme Court, but trust me on that one. Second principle is standing. So the district court here seemed to look at this in terms of standing, count one, the deck action, and said, I don't think there's jurisdiction here. There doesn't seem to be a justiciable controversy between the parties. And then dismissed that count without prejudice, another indication that it was jurisdictional. Principle three is, and this is where your brief touches on, section 1447C, which seems to suggest that where the district court makes a determination of subject matter jurisdiction, and standing is a determination of subject matter jurisdiction, it must, do not pass go, do not collect $200, it must send it back to the district court. My question is, after laying all that out, must it only send back that claim that it found standing? Or must it send the entire case back? And tell me why, and give me some law. Well, I think the law is in our briefs, and I didn't expect to go down that road, Your Honor, but. No, I'm sorry. 1447C says case. It does. And we've discussed case. We have some case law, including MAC, which you guys cite. Right. Which uses claim. In that case, what happened was some claims settled, and then some claims settled, and then a couple claims didn't, and were litigated. It goes to an appeal, and the district court says, hey, or sorry, that we say it for the first time, hey, there doesn't appear to have been standing on these remaining claims. And so if at any time there's no subject matter jurisdiction, we refer it back. But it only did the claims, not the case. And it was clear it said claims in there. Right. And the rule says case. And I think this was a discussion that the two law firms had in Clarenbeak, which we cite, where there was removal in the court, discussed how if the court doesn't have jurisdiction from day one, if you're moving to dismiss, then the only remedy available is remand. It's not have me pick and choose. The problem, it seems to me, and then I'll shut up because I see that Judge Legault has some questions that she wants to ask. The problem, it seems to me, is that standing, unlike diversity and unlike a federal question, is not case complete. It's specific. It's claim specific. In other words, what the Supreme Court has said is standing is not engrossed. It is specific to each claim. And so where the subject matter jurisdiction problem is only specific to a claim, why would the remand not be claim specific and instead case specific? Well, because the pieces are tied together. And respectfully, Your Honor, I think the case law, Crow and American Tobacco, when there's a question as to jurisdiction, the court has to stop because the only basis of the jurisdictional argument that was raised was fraudulent joinder. And the court has to immediately take a look at that and say, okay, has there been a fraudulent joinder? If there has not, then I have to remand the whole case back because the pieces are intertwined. Here, the claims are intertwined. I know I'm speaking rapidly.  Oh, it's okay. The claims are intertwined because the deck action serves as a predicate for the bad faith action. The declaratory action raised several issues, and the court erred in only looking at one of them. Geico focused the court on one of them and ignored the other. You could have a bad faith claim separate from a deck action. I mean, they're not intertwined in the way other potential claims can be. Well, yes and no. You can have a deck action over the existence of coverage. But here, the deck action was a predicate for to confirm the agreement that would ultimately be the necessary predicate for the bad faith action had actually occurred. Now, half step back, this court issues an opinion in a case called Cawthorn. And immediately after Cawthorn, Geico, through the same law firm, goes out and starts going back to existing cases and asking in identical circumstances where there had been a consent judgment with Geico's approval. And those cases are Peleas and McNamara and Pratt. And this court dealt with Peleas, McNamara, and Pratt ultimately. And I believe Pratt was sent back to reconsider in light of the McNamara decision. Peleas' decision was separate. But what they had done is, even though the same predicate had existed, okay, the parties realized that there's going to be an excess judgment. They want to resolve the judgment amount and then just go sue for bad faith. They need Geico's approval because Geico has, under the policy, control over the defense and settlement. They get the approval. Then Cawthorn comes out. And for its brief life, thankfully brief life, and Cawthorn was my case also, for its thankfully brief life, Geico, through the same counsel, goes back and starts reopening cases. I understand why you think the deck action was needed. I understand that.  But I think the question still remains, and this gets to Judge Legoma's question as well, which is they don't seem to rise and fall on each other. I mean, coverage is necessary in order for a bad faith claim. So, I mean, they're not necessarily intertwined in the sense that you can't litigate them separately. We seem to have case law which says that under 1447C, where there's a standing defect, you remand just the claim that has the standing defect. And that would seem to leave the bad faith claim for us to decide. No?  And respectfully, Judge, no, this is why they're intertwined. So, when Geico starts in Peleas and McNamara and Pratt starts challenging their prior agreements, the initial cure, and what was before the district court, the initial cure was to go back to the state court where the judgment was entered and say, we want a clarification. We want to make sure that the deal we made, that all we're going to do is discuss bad faith, not whether there was reasonable, whether it was made in good faith. There's no collateral attacks. We're just going to litigate whether they failed to settle when they could and should have done so. And we raised that motion to get clarification. And part of the record is that Geico opposed that motion. That motion at the state court level was ultimately denied in part because Geico said, no, we don't agree. That was the agreement. Well, remember, a consent judgment is a contract. And so the deck action was, do we have all the pieces in place that formed the contract that would bring us here so that we could litigate one issue and not be collaterally attacked? The answer that Geico filed, along with their motion to dismiss, at paragraph 23 of their answer, denies the allegation and the underlying complaint that said the... And again, if I'm following correctly, why do you need Erudani, though, for that point? I mean, why can't he just be a witness or someone? Because the contract is with Mr. Erudani. Geico, when Mr. Paliello sues Mr. Erudani, Geico is not a party to that lawsuit. They're not allowed to be under 627.4. But the record shows that Geico was aware of the settlement agreement, which was protracted, even those negotiations. And then, at least on paper, agrees with that process. Now, I do think that the record gets a little shaky in terms of Geico maybe changing its mind. But my understanding, at least where we are today, is that Geico agrees that McNamara essentially controls, right? Well, they agreed as to one of the aspects of the declaratory action. But as you can see from their answer, what they were still challenging is whether the agreement, the contract, was reasonable and made in good faith, whether it was tackable in terms of the amount, whether there was other elements. Yes, Judge? The problem, and this goes back to the original discussion you were having with Judge Luck, is that the district court did not have subject matter jurisdiction because of lack of standing as to the DAC action. So that should have been remanded back to the state court. But there was subject matter jurisdiction and standing for the bad faith claim. And under the MAC decision, what we're supposed to do is send back one claim, and then you keep the claim that is properly before the district court. And that is properly before this court and briefed. So could you maybe address that particular claim, which is the bad faith claim? Why we should have had a trial and not a summary judgment, Your Honor? Yes. Yeah, I think the record is fairly well developed on that. The transcript from the hearing that the district court had with us, I think evidence is that he had some fairly solid preconceived notions. And he rejected the report and testimony by plaintiff's expert. He didn't agree with, he weighed the evidence as to what, he assumed that what Geico's witnesses said they did was correct and what the plaintiff's attorney said was not correct. Even though in the transcript, he does several times say, isn't that a question of fact? Isn't that a question of fact? And you hear me saying in the transcript, yes, I agree. That's why we should go to a jury. He then made a decision that as a matter of law, based on the evidence as he sees it, no jury could find that Geico had failed to do several things. One of the biggest, and I'm running out of time. One of the biggest issues was Mr. Aradani was asked by Mr. Colello, admit liability so that there was never a question about who's at fault. Mr. Colello would have no downstream consequences to his insurance. And this is developed again in the hearing transcript, but also in the evidence that's cited at the hearing. There's no record that Geico ever went to Mr. Aradani and said, hey, are you okay? This is a condition. This is one of the conditions. We are required under 30, 40 years of bad faith law to communicate with you, tell you what needs to be done to get out of jail free here. And are you okay with admitting liability? Now, as I said at the hearing, that happens all the time once you're in litigation. But the judge was very concerned. The district court was very concerned about the downstream. It wasn't the issue, though, how the language was going to be. It wasn't that they weren't willing to ask their client to do that. It was we have to sort of work out what the language is. And so they gave the release, hey, write your dream release, give it to us, and we'll ask our client. That is a construct created by the district court that does not appear in the actual evidentiary record. There's no indication in any of the depositions, the transcripts that anyone at Geico said. I thought there was an email or it was a cover letter. I can't remember what it was. There was a letter. I'm out of time. Please go ahead. Right. There was a letter somewhere in the middle of the time period that said, you know, tell us what you want in the release. And there was a response. Unlike the errors and robust cases, there was a response a few days later saying my letter was pretty clear. I told you what needs to be in there. What the district court focused on was what would the language be with regard to the admission of liability. And it's absent from anywhere in the record that anyone contemplated that or that the adjuster who has legal claims home office legal access ever went to claims home office legal and said, what should we do about this? Let's hear from your public counsel. Thank you. Thank you. Good morning, may please the court. Jordan Thompson, on behalf of Geico, your honors, this court should uphold summary judgment entered in Geico's favor because the court properly entered summary judgment on the bad faith claim because the court had jurisdiction over that claim. If I can just get to jurisdiction, do you agree that a the district court here made a determination that there was no subject matter jurisdiction with regard to the deck action because of a lack of standing? B, that means that under 1447 C, there needed to be a remand and C, under our Mac decision, that remand was only as to the first claim. And D, that means that there was, in fact, diversity with regard to the remaining claim of the bad faith claim. Your honor, I will agree with it. There was diversity with regard to the bad faith claim. If the court determines that it was standing as the issue that was determined by the court, then I think it would be that claim that gets remanded. But I would say that the court in ruling and making the court's ruling, it actually reviewed three motions. Geico's motion to dismiss count one Geico's fraudulent joiner motion and the motion to remand. And in reviewing all that, the court acknowledged Geico's argument of the fraudulent joiner because the sole analysis that needed to be done was was was there a case in controversy? But the court denied it as mood because it dismissed count one for lack of standing. Right. The court denied it as mood because it decided there was no case in controversy. Right. Which is the exact same analysis that would determine whether Mr. And Donnie was fraudulently joined would determine whether I don't disagree that that is an element of the deck action. But it seems pretty clear to me. I can read you the language. But but you don't need to go much further than the last page, which says I dismiss for lack of jurisdiction. And my dismissal is without prejudice, which would only be the case if it was a non merits dismissal. Right. Correct. Your honor. He said the judge, the district court acknowledged that there was no case in controversy. And he agreed with that. And he said lack of jurisdiction. Right. He said he was dismissing for lack of jurisdiction. I'd have to double check the order. I think he just said there was no case in controversy. So the court did an article three analysis. You're correct, your honor. And the court footnoted that that analysis was the same analysis. I'll read for you. This is page four of the order page for documentary 43. So the court lacks jurisdiction over count one. And it is due to be dismissed without prejudice and without leave to amend. Correct, your honor. And I mean, we got to take it at its word. Right. Correct. Yes. Yes, your honor. And I think the situation here, as far as referencing claims or actions, as far as the dismissal is in line with what the courts, the district courts frequently do when you have, for example, in a bad faith context or in the underinsured motorist context, they will file an underinsured motorist claim with a premature bad faith claim. And the court has jurisdiction over the whole case. And they will they will withhold jurisdiction and maintain the U.N. claim in front of the court. But they will dismiss under Article three. Not sure that's a great analogy, but I think Matt dictates the result here, which means that we likely have jurisdiction over the second claim. But so I think you probably want to get to the merits of that. Yes. So, yeah, I believe the court correctly found if there was no case in controversy, that the dismissal of count one as to Geico and Arandani was correct. And then the court maintained jurisdiction over the remaining claim, which would satisfy diversity for original jurisdiction and proceeded to the merits of the bad faith claim. And we're getting to the merits of the bad faith claim. This court decided in a published opinion in Aries v. Progressive, also Geico v. Peleus for both published opinions and an unpublished 11th Circuit opinion in Robles, which the district court relied on in determining that there was no issue of material fact for a jury to decide bad faith, specifically because what the issue in this case is and it's alleged. So let me let me hone in a little more clearly so we can all talk on very specific terms. Your opposing counsel, as best as I read his brief, says there are three issues of fact for which precluded summary judgment here. One is the sort of general category of communications with Mr. Arandani. And he was referring to that when he left here, which is the failure to tell Mr. Arandani that there was a request for him to admit complete and 100 percent liability on his own. And that's precluding certain defenses later on. And that wasn't communicated to him. Secondly, communication with plaintiff's counsel and specifically the dispute about how many times the agent talked with with what I'll call the second attorney, the attorney who ultimately turned down the offer. And then finally, the disregard of the expert's testimony here. So if you deal with those three categories, the last one with regard to the experts, I think the district court did not disregard the experts cited in the MSJ order, which, according to this court's unpublished opinion and more of a Geico, was the court acknowledged the expert's opinion and acknowledged why that expert's opinion did not create an issue of material fact. Well, I mean, you're right. It didn't ignore it, but it essentially said it's illegal. The expert gives legal conclusions. And so I'm not considering it. I mean, that's that's essentially what the district court did in that footnote. And I think and that's and that's what this court has said and more, which is the court has to do an analysis. They can't just ignore the expert testimony. They got to make a determination if that expert testimony would create an issue of material fact. And here it did it because of the issues in this case, as far as what the basis of the bad faith claim is, is stated in the complaint. So the complaint essentially says that by Geico reaching out to Mr. Del Rio in response to his demand to ask for clarification was a counteroffer. And so this the district court relying on the opinions of areas players and Robles in cases where the insurance company responds to a demand for a specific release in responding to that demand. They provide an overbroad release. This court has been the expert. So here's what the expert says, according to your opposing counsel, quote, the expert testified that Gustin was the adjuster could have started working on this. On the day on the day one of receiving the 30 day time limit demand to get a release put together, that would include information acceptable to Mr. Colello Colello's expert also explain instead of contacting and contacting and in staff counsel retain counsel or home office or a manager or somebody to assist her in putting together a general release so that she could get Mr. from a possible excess judgment and get this claim settled for 10 grand. She didn't do that. She sent back a letter and said, here's the release again. If you want something different, make some changes and do that. And Mr. Del Rio's letter was pretty specific. That's what the expert testified to on deposition, I believe. And I think the expert's opinion ignores the actual facts of the case. The expert opinion is things that could have been done. The determination of bad faith is are the things that were done. And so the issue in this case, specifically because if you look at the terming of the demand, this is what the district court pointed out as another basis to grant summary judgment was that it was demanded strict compliance. And it said, if you if you deviate from any of these terms, or you send me anything that's contrary to what I want, that's going to be a counteroffer and it's going to be a rejection of settlement. The examiner talked with her manager and she was confused specifically what Mr. Del Rio wanted. So the decision was made to reach out to Mr. Del Rio, explain to him that we need clarification on what you specifically want so that we can and we'll be happy to send it to our insurer. And that's the email that Judge Legault was referring to. Yes, Judge Legault pointed out the response to the demand. Now, this response was given 13 days before the demand was due. And then in response to that, a couple of days before the demand deadline, Mr. Del Rio responds, refusing to provide clarification. Well, he says my letter is the clarification. What more do you need me to say? He says, I disagree with you. I'm confused that you're confused. And so the issue is, and if you look at the examiner's testimony, was it was a reasonable for the examiner based on saying, I'm confused. Can you please give me clarification? Can you provide a release that you just drafted for your that you like? And I think the 11th Circuit has said several times in place and in Robles and areas that providing a proposed release, even in response to a demand that asks for specific language of, for example, no hold harmless language. And you and you respond with that. And it's deemed a counteroffer is if you're providing that to them and asking them to even draft it their own their own how they want it, that that's not going to be a rise to the level of bad faith. And I think what the expert points out, and I think what the district court acknowledged, and even this court acknowledged in place in Robles is on your best facts, which you which you may have presented is how Geico could possibly make its claims handling procedures better. But under the totality of circumstances, no reasonable juror would conclude the Geico act. What about the delay in in in reaching out so you know you get the you get the sort of time bomb offer, and there looks to be at least some delay. Even when your client reaches out to the manager to then formulate this and send the email out what about that delay the expert seems to suggest that that also is evidence of some sort of bad faith, it's in material one because there's a causation problem there because that's not the reason the case didn't settle. The reason the case didn't settle is pointed out by Mr. Del Rio failure to agree within the 30 days is a pretty decent reason for why it didn't settle. The reason it didn't settle stated in the complaint, and in the in the rejection letter was you were you asked me for clarification, that was a counter offer. We're not going to settle. And so the issue really becomes, was it reasonable for the examiner to ask for clarification now the communication with the insured. I think there's record evidence to show that not only was the insured copied on the response to the demand to Mr. Clello or Mr. Del Rio asking for the clarification, but there's documented phone calls where the examiner says, I talked to my insured he had Mr. Del Rio hasn't asked to answer my questions for clarification. I will let you know when he does. And then the response to the asking for clarification is just a straight rejection. And I think this puts this case squarely within Aries, Robles and Pleyas and particularly Robles. Robles, the bad faith case was essentially you're in bad faith for putting the onus on the plaintiff's attorney to draft the release to their liking. And as and in responding to our demand because you didn't give us what we wanted. That's bad faith. And the 11th Circuit upheld and said, putting the asking the plaintiff's attorney to draft the release that is to their liking or what they want, particularly as the district court pointed out in this case because it included that liability issue, what the insurer needed to consider before they would admit anything without knowing that language. What would Geico convey to the insurer besides, hey, they're asking for this, this language we're going to we're trying to get it from him. He hasn't given it to us. So there isn't anything specifically because Mr. Del Rio wouldn't provide the clarification, wouldn't draft the release on his own to provide to Geico so the Geico could convey it. So the insurer could consider it. And it's ultimately up to the insured whether the insured is going to admit liability or not. The question is, what is Geico supposed to convey to the insured if asking for the clarification? And Ms. Gustafson testified. She's like, the reason I asked for clarification is because I did not want to make a mistake. The gentleman told me that it was strict compliance. And so because of that, I said, hey, can you can you show me which one? I'm confused. Now I get the attorney's response was, well, I'm not confused. So the question is, was was it reasonable for Ms. Gustafson to say, hey, well, you're the you're the source. In that position, though, she was asked specifically about the points. And I think the way that that counsel went through it was, hey, here's one of the points. Were you confused by this? Well, no, I'm not. Were you confused by this? No, I'm not confused by that. And then I think she fell back on, well, I was confused about the terms of the offer. Right. She testified that she knew what was being asked. Right. The question is the substance of it. So how can you commit? You couldn't communicate to the insured or he didn't know what was in a release. So, for example, she knew. Is that not a question of fact, though? It's not a question of material fact because it seems pretty material. I mean, the concept of the release and whether that was an actual counteroffer or something different or or sent in good faith, that letter, that email, or if it was a genuine, genuine decision or a genuine effort to try to work something out is very much at issue. I think the point of it is, is under the totality of circumstances. And that's what this court has said in Aries and Palaeus and Robles is is this is the is what the insurer, what the examiner did. The course of action that the examiner took was that done in bad faith. And would any reasonable juror agree otherwise? And so here you have an insurance company that tenders the policy limits almost immediately without a demand. Basically responds to every correspondence they get from from the claimants council, attempts to meet the settlement demand conditions by acknowledging, hey, I know you want to release this specifically asked my insured to make liability. Here's a proposed release. There was never rejection of settlement. There was never putting the insured the company's interest ahead of the insured. So under these totality of circumstances, and I think that's what Aries and that's why the district court relied on it. But when you couple with the fact that there was a statement in there that says, if you do anything that's contrary and do anything at all, we're going to be another counteroffer. And so that's why the examiner says this release is proposed. She emphasized it like twice and said, here you go. Here's a proposal. Can you just draft this language and I can give it to my insured? I'm not rejecting this. I'm not making a counteroffer. Would you please do it? And the answer was just, no, you're in bad faith. And so I think under those totality of circumstances, which this court has has looked at several times and as the district court pointed out, it is as a matter of law, not bad faith. And so we would ask and so that I don't conflate issues. It does sound like everything you're saying supports why Mr. Aridani perhaps was a necessary party, because his state of mind and his understanding perhaps also was critical to the bad faith issue, which means that maybe it wasn't fraudulent. Those are two separate issues. Right. That's why I started out saying I don't want to conflate it. But your responses to the bad faith, in my mind, kind of suggests that Mr. Aridani actually was an important party because of everything you just said about his understanding. Mr. Marindani may be a witness in the bad faith case of the facts and circumstances that transpired during the claims handling. And it's a de novo review for this court. The reason Mr. Aridani was fraudulently joined to this action, because there is no possibility under Florida law, under the Florida chapter 86 of the deck action under the federal deck action standard, or even Article three, there's no possible way that plaintiff could establish a deck action against Mr. Marindani and for that matter, Geico, because the two bases, there's only two bases in which they claim that there's a case in controversy for the DJ. The first one was, well, we need to know if this consent judgment is a binding element of damages to support our bad faith. But the answer is the 11th Circuit has said that before they filed this bad faith complaint that under McNamara, the answer is absolutely yes, that consent judgment is a functional equivalent as if it had been decided by a jury. The second basis, and that's all they plead in their complaint. That's all they said is, is that's the reason is we wanted to know whether this is the binding measure. The second basis which was raised as an argument was... Counselor, you've expired your time. Thank you so much. I apologize, Your Honor. Thank you. Thank you. Thank you. It's a good thing there's a record, the record is a bit clearer than counsel's recollection here at oral argument. There was not a fraudulent jointer. I can point to two other cases, one of which involves Geico and the same law firm, where after this district court ruled... I'm just not sure it matters. And I think for the reason you point out in your brief, which is under 1447 C, where there's a determination, whether it's right or not, of lack of standing, the requirement is there be a remand. And the only question is, does a remand the whole case or the claim? Right. And that's why I went back and checked, Mac, if the court reads Mac carefully, it says in deciding what to do with Mac's remaining claims...  Because there were multiple claims and the court said, you didn't have standing on these. What do I do with the rest of your claims? Which was the rest of the case. Right. It wasn't... But that was remanded. And then the other claims were disposed of by the court. Right. The court disposed of... It said, you don't have the ability to have these claims. But I understood the court looking at Mac saying, do we keep some and not others? And that result wasn't really what happened in Mac. It says... Well, it sounded to me in reading Mac that... And point me to anything that you think is to the contrary. The decision in that case instructs the district court, says there's lack of standing as to these claims. Remand these claims back to the state court. Respectfully, I don't think that's what Mac says. I think there's a crow and American tobacco is along in the cases. Mac concludes with, accordingly, if the district court had determined that Mac lacks standing to bring his declaratory judgment claims, it would have been required to remand those claims back to the state court. And then it cites to all the cases... I think I'm going to rely on my reading of Mac and suggest to the court that what Mac did was dispose of the remaining claims or man them all down. The record is clear that Ms. Gustin did say, I understand all the parts, but her party line was... But I was confused. And so she went to the manager halfway through the 30-day period. She sends a letter. I think the court should read the letter. It's a bit less effusive than counsel represented. It's more basic. And then Mr. Del Rio writes back and then nothing happens during the rest of the time in which the 30-day window exists. And not during that time, there was no evidence that in terms of causation, one of the elements was he needs to admit liability. That's never discussed. And I believe the record says, well, I wasn't going to get around to that, or I'm not sure I was going to talk to him about that until I had the release. We would have a different case if they said, okay, you send me a letter back that says your prior letter was clear. Here's the changes as we understood you'd want them to make. We are not making a counteroffer. This is what we understood from your letter. And yes, our insured will admit liability. If that had happened during the 30-day window, we would have a very different case. But in terms of alacrity, in terms of positive action, in terms of protecting the insured, there are elements of the demand that were never met and never tried to meet. And there was just a, once you got Mr. Del Rio's letter with seven or eight days left in the 30-day window, you did nothing for your time. Thank you, Your Honors.